UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL S. STEINMAN,

       Plaintiff,

       -vs-                                         07-CV-532-JTC

MORTON INTERNATIONAL, INC.,
f/k/a Morton Salt Company,
f/k/a New Moon International, Inc.,

MORTON SALT COMPANY, a division of
Morton International, Inc.,

NEW MORTON INTERNATIONAL, INC., and

ROHM AND HAAS COMPANY, INC.,

       Defendants.

---

MORTON INTERNATIONAL, INC.,

       Third-Party Plaintiff,

       -vs-

MERZ METAL & MACHINE CORP.,

       Third-Party Defendant.

---

APPEARANCES:    MICHAEL GREGORY COOPER, ESQ., Hamburg, New York, for Plaintiff.

                  PERSONIUS MELBER LLP (SCOTT R. HAPEMAN, of Counsel), Buffalo, New York, for Defendants Morton International, Inc., Morton Salt Company, New Morton International, Inc., and Rohm and Haas Company.

                  HURWITZ & FINE (MICHAEL F. PERLEY, ESQ., of Counsel), Buffalo, New York, for Third-Party Defendant Merz Metal & Machine Corp.

**PROCEDURAL BACKGROUND**

In this action (which was originally brought in New York State Supreme Court, Erie County, on July 11, 2007, and removed to this court in August 2007 on the basis of the diversity of citizenship of the parties), plaintiff Michael S. Steinman seeks damages under the common law of negligence and New York State Labor Law §§ 200, 240(1) and 241(6) for personal injuries allegedly sustained on July 12, 2004 while he was performing demolition work on behalf of his employer, third-party defendant Merz Metal & Machine Corp. ("Merz Metal"), at a salt mining facility owned and operated by defendant/third-party plaintiff Morton International, Inc. and related corporate entities (collectively, "Morton"). Following discovery, the parties filed summary judgment motions pursuant to Rule 56(c) of the Federal Rules of Civil Procedure seeking, among other things, a ruling with respect to Morton's liability under New York Labor Law § 240(1), which imposes strict liability on contractors and building owners to provide adequate protection to workers from certain elevation-related hazards. In a decision and order entered November 19, 2010, this court granted Morton's motion dismissing the Labor Law § 240(1) claim from the case, relying on a "significant body" of New York decisional law to find that the accident at issue did not involve the type of hazard covered by the statute because the undisputed facts established that plaintiff was injured by an object that fell from the same level at which he was working. *Steinman v. Morton Int'l, Inc.*, 756 F. Supp. 2d 314, 320-22 (W.D.N.Y. 2010).

Upon completion of court-ordered mediation without settlement, plaintiff moved pursuant to 28 U.S.C. § 1292(b) to certify the court's dismissal of the Labor Law § 240(1) claim for interlocutory appeal on the basis that it involved a controlling question of law as

to which there is a substantial ground for difference of opinion (Item 70). The U.S. Court of Appeals for the Second Circuit granted leave to appeal, and on May 10, 2013, issued a summary order vacating this court's dismissal of the Labor Law 240(1) claim and remanding the matter for further proceedings. *Steinman v. Morton Int'l, Inc.*, 519 F. App'x 40 (2d Cir. 2013). The circuit court found that the "same-level" rule derived from the holdings in the cases relied upon by this court was inconsistent with the rule pronounced in the New York Court of Appeals' more recent decisions, which focuses on "the single decisive question … whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential." *Wilinski v. 334 E. 92nd Hous. Dev. Fund Corp.*, 18 N.Y.3d 1, 10 (2011). The Second Circuit also found that triable issues of fact exist in this case both as to whether there was a physically significant elevation differential giving rise to risk of injury, and whether plaintiff's injuries where proximately caused by the absence of proper protection, precluding entry of summary judgment in favor of either party on the Labor Law 240(1) claim. The court therefore remanded the matter to this court, with specific directions to "consider whether a jury could reasonably find that adequate protective devices contemplated by the statute could have been implemented such that the accident could have been prevented." *Steinman*, 519 F. App'x at 52.

On remand, Morton once again moves for summary judgment dismissing plaintiff's Labor Law 240(1) claim as a matter of law. For the reasons that follow, this motion is denied.

**FACTUAL BACKGROUND**

The following undisputed facts, derived from the parties' pleadings and submissions on the prior and present summary judgment motions, are reported here as essentially unchanged in any material respect from the court's November 19, 2010 ruling.

In the spring of 2004, Morton hired Merz Metal to fabricate and install a new carbon steel "coal hopper" (or "bunker") to replace the old concrete coal hopper located on the mezzanine level of the power house at Morton's facility in Silver Springs, New York. The coal hopper was utilized to distribute coal through discharge grates to a conveyor belt situated on the mezzanine floor directly below the hopper, which then conveyed the coal to the power house boiler. The mezzanine itself was a steel-construction platform utilized as a walkway for access to the conveyor belt apparatus, rising approximately twenty feet above the power house floor.

The coal hopper project required Merz Metal to demolish and remove the old concrete hopper, which was in deteriorating condition after many years of continuous use, prior to installing the new steel hopper. During the demolition phase, the length of the conveyor apparatus was covered by a plywood platform built by Merz Metal at a height of approximately three feet above the mezzanine floor to protect the conveyor belt from being damaged by demolition debris.

The old concrete hopper itself was approximately one hundred feet long, twelve feet across, and six feet deep, shaped like a "half pipe." It was suspended at a height of approximately four feet above the mezzanine floor (and two feet above the conveyor belt) by steel straps attached to structural beams on the ceiling. At one end of the hopper was a structure composed of bricks which were mortared to the outside and inside walls of the

hopper to function as both a "cradle" upon which the hopper rested and, on the inside of the hopper, an "end cap."

At the time of the accident in July 2004, plaintiff was a union sheet metal worker employed by Merz Metal and assigned to the coal hopper project at the Morton facility. By July 12, plaintiff and other Merz Metal employees had been working on the demolition of the old hopper for about two weeks, and had reached the brick end cap structure. Plaintiff and a co-worker, Scott Snuszki, had begun dismantling the end cap by using hand-held forty-pound pneumatic jack hammers while standing on the plywood platform above the conveyor belt. The top of the end cap structure was approximately nine feet above the plywood platform on which the workers were standing, and the bottom of the concrete half-pipe was approximately two feet above the plywood platform.

Plaintiff and Mr. Snuszki began the demolition of the end cap while standing on the same side of the structure, but Mr. Snuszki soon moved around to the opposite side to create more working space. The workers began at the top of the brick structure and worked toward the bottom, removing 2 or 3 bricks at a time. After approximately 20 minutes and the removal of several rows of bricks, a large portion of the remaining end cap structure suddenly collapsed and landed on plaintiff, injuring his left leg and ankle. *See generally* Local Rule 56 Statements of Fact (Items 93, 100) and Exhibits attached thereto; *see also Steinman*, 756 F. Supp. 2d at 317-18.

In support of its present summary judgment motion, Morton contends that the New York Court of Appeals has made it clear in *Wilinski* and other decisions that Labor Law 240(1) does not impose absolute liability on an owner or contractor for failure to provide protection from objects falling during demolition of a wall when this was the very goal of the

work. Plaintiff counters that a jury could reasonably make the finding contemplated by the circuit court's directive on remand that an adequate protective device could have been implemented to prevent the accident that resulted in plaintiff's injuries.

## DISCUSSION

I.  **New York Labor Law § 240(1)**

By this motion, the court is again called upon to determine whether the injuries suffered by plaintiff in this case fall within the scope of duty imposed by Labor Law § 240(1). That statute provides:

> **Scaffolding and other devices for use of employees**
>
> 1.     All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

As explained by the New York Court of Appeals in *Wilinski*, section 240(1) "imposes absolute liability on building owners and contractors whose failure to 'provide proper protection to workers employed on a construction site' proximately causes injury to a worker. Whether a plaintiff is entitled to recovery under Labor Law § 240(1) requires a determination of whether the injury sustained is the type of elevation-related hazard to which the statute applies." *Wilinski*, 18 N.Y.3d at 7 (quoting *Misseritti v. Mark IV Const. Co., Inc.*, 86 N.Y.2d 487, 490 (1995).

In its November 10, 2010 summary judgment ruling, this court examined the then-current status of decisional law addressing the types of hazards falling within the ambit of Labor Law § 240(1), including the New York Court of Appeals' holdings in *Rocovich v. Consolidated Edison Co.*, 78 N.Y.2d 509 (1991) ("exceptional protection" of § 240(1) limited to "special hazards" of elevation-related risk); *Ross v. Curtis-Palmer Hydro-Electric Co.*, 81 N.Y.2d 494, 500 (1993) ("special hazards" referred to in *Rocovich* "are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured"); *Narducci v. Manhasset Bay Associates*, 96 N.Y.2d 259, 267-68 (2001) (§ 240(1) applies where the falling of an object is related to "a significant risk inherent in the relative elevation at which materials or loads must be positioned or secured"). The court took particular note of the holding in *Misseritti* that the collapse of a 22-foot high concrete block fire wall, which had been newly completed at same level where the plaintiff was working, was not "the type of elevation-related accident that section 240(1) is intended to guard against …," *Misseritti*, 86 N.Y.2d at 491, and further noted that a number of appellate level decisions had relied on this rationale to develop the principle that section 240(1) does not impose absolute liability on an owner or contractor for injury to a worker caused by an object falling from the same elevation level at which the work was being performed. *Steinman*, 756 F. Supp. 2d at 321. The court then applied this principle to the undisputed facts showing that, "while the portion of the structure which collapsed and landed on plaintiff's leg fell from a height of somewhere between two and eight feet above the level of the plywood platform where plaintiff was positioned, the entire integrated structure at the end of the concrete coal

hopper was situated at the same level as the work site …," and concluded that the injury suffered by plaintiff was not the type of elevation-related hazard to which section 240(1) applies. *Id.* at 322.

On October 25, 2011, the New York Court of Appeals issued its decision in *Wilinski*, which reexamined and rejected the "same level" rule relied upon by this court in its November 19, 2010 ruling. In *Wilinski*, the plaintiff was injured when demolition debris fell from a wall near the plaintiff's work site causing two ten–foot high unsecured metal pipes to topple onto him from a height of about four feet. The trial court granted summary judgment in favor of the plaintiff on his Labor Law § 240(1) claim, finding that the undisputed facts established that the plaintiff had suffered a gravity-related injury proximately caused by the absence of a statutorily enumerated safety device. The Appellate Division disagreed, finding that the collapse of the pipes, like the collapse of the wall in *Misseritti*, was "not the type of elevation-related accident that [the statute] is intended to guard against." *Wilinski v. 334 East 92nd Housing Development Fund Corp.*, 71 A.D.3d 538, 539 (1st Dep't 2010). According to the Appellate Division, "[s]ince both the pipes and plaintiff were at the same level at the time of the collapse the incident was not sufficiently attributable to elevation differentials to warrant imposition of liability pursuant to Labor Law § 240(1)." *Id.*

The Court of Appeals reversed, and denied summary judgment to both parties, finding that a triable issue of fact existed as to whether the plaintiff's injury resulted from the absence of a safety device statutorily prescribed under Labor Law § 240(1). The court traced the evolution of its jurisprudence defining the category of injuries that warrant the

special protection of Labor Law § 240(1), with specific reference to the holdings in *Rocovich, Ross*, *Narducci*, and *Misseritti*, and noted the intermediate appellate courts' reliance on *Misseritti* "as support for the proposition that a plaintiff injured by a falling object has no claim under section 240(1) where the plaintiff and the base of the object stood on the same level." *Wilinski*, 18 N.Y.3d at 7-8. The Court of Appeals expressly rejected the notion that *Misseritti* calls for the categorical exclusion of injuries caused by falling objects that, at the time of the accident, were on the same level as the plaintiff.

> *Misseritti* did not turn on the fact that plaintiff and the base of the wall that collapsed on him were at the same level. Rather, just as in *Narducci*, the absence of a causal nexus between the worker's injury and a lack or failure of a device prescribed by section 240(1) mandated a finding against liability. Thus, we decline to adopt the "same level" rule, which ignores the nuances of an appropriate section 240(1) analysis.

*Id.* at 9. The court further noted the inconsistency of the "same level" rule with its more recent decisions in *Quattrocchi v. F.J. Sciame Constr. Corp.*, 11 N.Y.3d 757 (2008) ("falling object" liability under Labor Law § 240(1) not limited to cases in which the object fell while in the process of being hoisted or secured), and *Runner v. New York Stock Exch., Inc.*, 13 N.Y.3d 599 (2009) (applicability of § 240(1) in falling object case does not depend upon whether the object fell on the worker, but "rather whether the harm flows directly from the application of the force of gravity to the object."). Applying the nuances of these holdings to the facts before it, the court found that the plaintiff was not precluded from recovery under section 240(1) simply because the pipes that struck him were on the same level as his worksite. Rather, the court determined that "the risk arose from a physically significant elevation differential" considering both the distance of over four feet which the pipes fell

before striking the plaintiff (who was five feet, eight inches tall), and the amount of force the four-inch diameter, ten-foot tall metal pipes were able to generate.  *Id.* at 10.

Recognizing that this court's ruling on the prior summary judgment motions in this case was made without the benefit of *Wilinski*'s clarifying rejection of the "same level" rule, the Second Circuit vacated the dismissal of plaintiff's Labor Law § 240(1) claim and remanded the case for further proceedings.  The circuit court held that, following *Wilinski*, section 240(1) can apply even where the plaintiff and the base of the object that fell stood on the same level, and that "the key inquiry is whether there is 'a risk arising from a physically significant elevation differential.' "  *Steinman*, 519 F. App'x at 51 (*quoting Wilinski*, 18 N.Y.3d at 10).  The Second Circuit specifically found issues of fact to exist regarding the "key inquiry" in this case, since plaintiff had presented evidence from which a jury could reasonably conclude that the distance of between two and eight feet over which the portion of the end cap structure fell "was physically significant, given that it weighed 2000 pounds and generated enough force to break through the platform on which [plaintiff] was standing."  *Id.*

> Moreover, the district court's holding that the "height" here was irrelevant because the material that fell was an integrated part of one brick wall on the same level as the work site is wrong in light of *Wilinski*; it is the height differential between the falling object and the plaintiff that matters, not whether the falling object was part of a larger wall situated at the same level as the plaintiff.

*Id.* at 51-52.  Finally, the circuit court found that, assuming the existence of a physically significant elevation differential, there were issues of fact as to whether plaintiff's injuries were proximately caused by the absence of proper protection, precluding entry of summary judgment in favor of plaintiff on his section 240(1) claim.  Accordingly, the circuit court

remanded the case to this court with specific instructions to "consider whether a jury could reasonably find that adequate protective devices contemplated by the statute could have been implemented such that the accident could have been prevented." *Steinman*, 519 F. App'x at 52.

On remand, Morton argues that a jury could not reasonably make this finding, citing language in *Wilinski* and *Salazar v. Novalex Contracting Corp.*, 18 N.Y.3d 134 (2011), for the proposition that imposing absolute liability under section 240(1) for failing to provide protective devices to prevent walls or objects from falling, "when their fall was the goal of the work, would be illogical." *Wilinski*, 18 N.Y.3d at 11; *Salazar*, 18 N.Y.3d at 139-40 (installation of protective cover over three-foot-deep hole into which plaintiff fell "would have been contrary to the objectives of the work plan" to fill the hole with concrete; "Labor Law § 240(1) should be construed with a commonsense approach to the realities of the workplace at issue"). According to Morton, since it is undisputed that the object of the work being performed by plaintiff and his coworker was to demolish the very structure which ultimately collapsed and landed on plaintiff's leg, it would be illogical and contrary to the commonsense realities of the workplace to require the implementation of a device to prevent the bricks from falling.

This argument must be rejected, for several reasons. First of all, Morton presented this same argument to the Second Circuit (*see* Item 101-17, Excerpt from Morton's Appellate Brief). Although the argument was not specifically addressed in the May 10, 2013 summary order, the circuit court expressly noted that it had "considered all of the parties' contentions in support of their respective requests for Summary Judgment in their favor and conclude[d] they are without merit." *Steinman*, 519 F. App'x at 52.

Consequently, this court must consider the Second Circuit's summary order– and its explicit instructions on remand–as a strong indication that the facts presented on summary judgment provide a reasonable basis for a jury to find that the case involves the type of elevation-related accident that Labor Law § 240(1) is intended to guard against.

Secondly, the court is not convinced that no triable issue of fact exists as to whether implementation of a protective device of the type contemplated by the statute would have been contrary to the objectives of the work plan. In this regard, plaintiff contends that it was not the object of the work to demolish the brick end cap structure *en masse*, but rather to methodically dismantle the several courses of brick structures composing the end cap by removing a few bricks at a time, and that proper inspection would have revealed the need to implement bracing to shore up the structure in order to prevent the type of collapse which caused plaintiff to sustain injury. For its part, Morton asserts that the kinds of protective devices section 240(1) prescribes are inapplicable to the circumstances of plaintiff's injury because their application would prevent the very work being performed by plaintiff at the time of his injury.

However, as the New York Court of Appeals observed in *Wilinski*, without admissible proof to demonstrate either that protective devices could have been used to support the structure during demolition, or that no protective devices were called for, the parties' assertions are inadequate to meet their respective burdens with respect to whether the kinds of protective devices section 240(1) prescribes are applicable to the circumstances of plaintiff's injury in this case. Rather, "[w]hether plaintiff's injuries were proximately caused by the lack of a safety device of the kind required by [Labor Law § 240(1)] is an issue for a trier of fact to determine." *Wilinski*, 18 N.Y.3d at 11.

Finally, in light of the New York Court of Appeals' explicit recognition of the ongoing evolution of its "jurisprudence defining the category of injuries that warrant the special protection of Labor Law § 240(1) …," *Wilinski*, 18 N.Y.3d at 7, and drawing from the experience of the prior proceedings, the court declines the invitation to engage in any further examination of the current status of the law as it applies to the circumstances of the injuries suffered by plaintiff in this case.  Significantly, the Second Circuit found on the record before it that, since section 240(1) applies when injury results from the collapse of a structure at the same level as the worksite, triable issues of fact exist in this action as to whether there was a physically significant elevation differential at play, as well as to whether plaintiff's injuries were proximately caused by the absence of proper protection. *Steinman*, 519 F. App'x at 51-52.  In the absence of any further development of the record on remand, the court has little difficulty concluding that genuine issues of material fact remain for a jury to determine regarding whether adequate protective devices contemplated by the statute could have been implemented such that the accident could have been prevented, precluding judgment as a matter of law in favor of either party under Fed. R. Civ. P. 56(c).

## **CONCLUSION**

For the foregoing reasons, Morton's motion for summary judgment (Item 89) is denied.  The court will conduct a status conference with counsel by telephone on February 18, 2015, at 1 p.m. to discuss a schedule for further proceedings in the case.  The court will initiate the call.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: January 14, 2015
p:\pending\07-532.sj2.dec30.2014